25 N.J. Super. 466 (1953)
96 A.2d 702
CITY OF ENGLEWOOD AND M. LESLIE DENNING, PLAINTIFFS,
v.
ALLISON LAND COMPANY, CHARLES BARTON, PAUL HUDSON AND WALTER D. VAN RIPER, AS TRUSTEES UNDER THE LAST WILL OF WILLIAM O. ALLISON, DECEASED, MAX BERNFELD AND THEODORE D. PARSONS, AS ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 21, 1953.
*467 Mr. LeRoy B. Huckin, attorney for plaintiffs.
Messrs. Van Riper & Belmont, attorneys for trustees and Allison Land Company.
Messrs. Walscheid & Rosenkranz, attorneys for defendant Allan Kriegel.
Mr. Theodore D. Parsons, Attorney-General of New Jersey.
*468 GRIMSHAW, J.S.C.
William C. Allison died on December 18, 1924, a resident of Englewood Cliffs, in the County of Bergen. He left a last will and testament which was probated in the former Prerogative Court. The first and eleventh paragraphs of the will are as follows:
"I. It is my desire and intention to dispose by gift of a large part of my remaining estate for the purpose of pleasing Almighty God, benefiting my fellow-man, and as far as possible developing that section of the Palisades along the Hudson, located in the borough of Englewood Cliffs and vicinity.

* * * * * * * *
"XI. All the rest, residue and remainder of my property, real and personal, whatsoever and wheresoever situate not hereinbefore specifically bequeathed, I give and devise and bequeath unto my said trustees, in trust nevertheless, to maintain and develop in accordance with my known wishes, the Palisades along the Hudson, in the borough of Englewood Cliffs and vicinity. I am now formulating more definitely plans for the development and maintenance of said Palisades, and to that end have requested two prominent residents of the city of Englewood to submit to me a plan for such development and maintenance. If such plan is submitted and receives my approval, then I direct my trustees to use this trust fund for the purpose of carrying out such plan. If, however, such plan does not receive my approval, then I order and direct my said trustees to use this trust fund for the development and maintenance of said Palisades section in accordance with my wishes as expressed to them."
Shortly after the probate of the will, Mr. Allison's daughter filed a complaint in the former Court of Chancery seeking to have the residuary clause declared invalid. On review, the former Court of Errors & Appeals, in Noice v. Schnell, 101 N.J. Eq. 252 (E. & A. 1927), certiorari denied Allison v. Schnell, 276 U.S. 625, 48 S.Ct. 304, 72 L.Ed. 738, held:
"We deem the disposition of his residuary estate made by Mr. Allison to be a valid, charitable trust, sufficiently definite for enforcement and execution in accordance with the wishes of Mr. Allison as expressed generally in his will through the trustees appointed by him who are vested with a discretion to devise the method and ways for the accomplishment of the testator's purpose."
Mr. Allison left an estate of $3,107,426.26. Of this amount $1,883,745.85 represented the value of stock of the Allison Land Company, a corporation owning land principally on *469 the Palisades. All of the stock of this corporation was owned by Allison.
In 1942 Harry J. Schnell and Frank V. Baldwin, trustees under the Allison will, and as such directors of the Allison Land Company, petitioned the former Court of Chancery for permission to convey to the Palisades Interstate Park Commission a portion of the Allison holdings without consideration. Since the Commission was committed to the duty of protecting and developing the Palisades, an objective which had occasioned the creation of the Allison trust, the conveyance could justly be considered to be in furtherance of the desires of Mr. Allison. By its decree, which bore the consent of the Attorney-General, the court approved the proposed gift.
In the petition filed by the trustees, there was among other things, an allegation that the trustees had caused to be prepared detailed plans for the development of a park of approximately 175 acres, extending from the Palisades to the City of Englewood. Intersecting highways made necessary the division of the park into three sections. Two of the sections of the park, comprising about 25 acres, have already been developed. The third section is a tract of approximately 150 acres, 70 acres of which are in Englewood Cliffs and the balance is in the City of Englewood. As stated in their petition, the purpose of the trustees was that the 150-acre tract would be developed in such a manner as to preserve "as far as possible the landscape and formations, the trees, shrubs and flowers indigenous to the Palisades." The development of the third section at the time of the filing of the petition had been suspended. Why does not appear.
In 1944 a similar application was made by Frank V. Baldwin, as surviving trustee, for permission to make another gift of land to the Park Commission. The petition contained allegations concerning plans for a park which were identical with those contained in the 1942 petition.
In the 1944 proceeding the trustee also sought a determination of the extent of his power to sell real and personal property in furtherance of the interests of the trust estate.
*470 The order dated May 26, 1944, bearing the consent of the Attorney-General, which approved the transfer of the real property to the Park Commission, also contained the following conclusions:
"1. That the function of the trust as imposed upon the petitioner as surviving trustee of the estate of William O. Allison is that the fund shall be applied in a manner that shall maintain and preserve the integral beauty of the Palisades in Englewood Cliffs, Fort Lee and vicinity."
And, again:
"3. That the trustees or trustee by reason of the duties imposed upon them or him in the performance of the William O. Allison trust and in order to carry out and fully perform the duties of said trust are or is empowered and authorized to sell and dispose of any and all real property of the trust whether held in the name of Allison Land Company, of William O. Allison, of the estate of William O. Allison or trustees or trustee and to make, execute and deliver all instruments that may be necessary to transfer and deliver a proper legal title to said lands or any of them."
The defendants Van Riper, Barton and Hudson were appointed substituted trustees of the Allison trust to succeed Frank V. Baldwin. On June 30, 1952 they contracted to sell to the defendant Kriegel, for a residential development, the 74 acres of the proposed park which lie within the City of Englewood. It is this sale which the court is asked to restrain.
The matter was submitted upon the pleadings, the pretrial order and a stipulation of facts.
The tract in question and the 70 acre portion in Englewood Cliffs are the only large parcels of real property still held by the land company. The plaintiffs argue with considerable force that as a result of the allegations contained in the petitions of 1942 and 1944 to the Court of Chancery, the trustees dedicated the land to public use as a park. The trustees, denying that there was a dedication, say that the petitions themselves disclose that the park plan had been abandoned, so far as the tract of 150 acres was concerned. *471 The petition stated that the plan "has been suspended." Those words do not indicate an intention to abandon the park plan. Rather they suggest a temporary halt in the development. But, be that as it may, as I view the situation, it is not necessary to resolve that issue.
The trustees make no attempt to offer justification for the proposed sale. They take the position that they are clothed with absolute discretion as to the manner in which they administer the trust and carry out its object. They say further, that having determined that the proposed sale would advance the interests of the trust, they should not be subjected to interference by this court with the exercise of their discretion.
With such a sweeping proposition I cannot agree. It is true that ordinarily this court will not concern itself with the details of administration of a trust. Nor will the court, generally speaking, interfere with the actions of trustees clothed with discretion. When, however, the beneficiaries of a trust charge that proposed actions by trustees will do violence to the intentions of the settlor of the trust and appeal to the court for relief, this court can and will intervene.
This is a charitable trust. The beneficiaries are the general public. Their spokesman is the Attorney-General and he is a necessary party to the litigation. Lanning v. Commissioners of Public Instruction, 63 N.J. Eq. 1 (Ch. 1902). Though named as a party defendant, he joins with the plaintiffs in seeking to prevent the consummation of the contract with the defendant Kriegel.
There is no doubt that the trustees in their discretion are authorized to sell the real and personal property comprising the trust estate. But the right to exercise that discretion is not absolute. It is tempered by the intent of the testator. Foley v. Devine, 95 N.J. Eq. 473 (Ch. 1924). In this case the discretion of the trustees is limited by the requirement that it should be exercised only for the maintenance and development of the Palisades. Noice v. Schnell, supra.
*472 Considering the action of the trustees in the light of the expressed intention of Mr. Allison, I am of the opinion that the sale should be restrained. I am unable to see how the maintenance and preservation of the Palisades would be advanced by the sale of a major portion of the trust property to a private developer. As Mr. Justice Katzenbach remarked in Noice v. Schnell, supra:
"It is important to remember this purpose (the desire to benefit his fellow man) when we consider that the vice-chancellor intimates that the testator may have intended to restrict the use of the Palisades for residential purposes. When the testator said that one of his purposes was to benefit his fellow-man he expressed a benefit which would be universal, not one which would be confined to a limited number of owners of lots in the Palisades section, restricted for residential purposes. The suggestion of the vice-chancellor that Mr. Allison may have intended to restrict the use of the Palisades for residential purposes implies the development of the Palisades for profit. There is nothing in the will to show that the testator had any such idea. The large part of his estate was, as declared, to be devoted to a gift to please Almighty God and to benefit his fellow-man. This language affords no support for any other view than that the testator intended a free and untrammeled gift of his residuary estate for these purposes. He desired to maintain for the public at large the Palisades and to preserve for such public their natural beauty. It was not surprising that he had in mind such a purpose. He was born, reared, and lived his life in this vicinity. He had seen the Palisades desecrated for profit. He had seen the natural beauty of portions of the Palisades destroyed in order to obtain material for use in commercial enterprises. He deprecated this desecration. He wanted to dispose of his estate to please Almighty God and to benefit his fellow-man. These objects could not be attained if profit was to enter into the plan. If profit had been in the mind of the testator it would seem as if he would have indicated in his will where the profits were to go. There is nothing in the will which refers to profits."
In the absence of any evidence justifying a conclusion that the purposes for which the trust estate was created would be advanced by the contemplated sale, I am constrained to restrain its consummation.
Judgment in accordance with the views herein expressed.