BANK OF DELAWARE, a banking corporation of the State of Delaware,
Plaintiff,

*vs.*

BAYARD W. ALLMOND, AUGUST F. WALZ, WILLIAM H. CANTWELL, GEORGE E. VANDEGRIFT, W. HARRY LEWIS, in their representative capacity as the Board of Governors of a testamentary trust of ALBERT T. HANBY, deceased, and Attorney General of the State of Delaware,
Defendants.

*New Castle, July 20, 1962.*

*Howard L. Williams* and *Robert M. High,* of Morris, James, Hitchens & Williams, Wilmington, for plaintiff trustee.

*Bayard W. Allmond* of Allmond & Wood and *L. Coleman Dorsey,* Wilmington, for defendants, members of the Board of Governors.

*E. Norman Veasey,* Deputy Atty. Gen., for defendant, Attorney General.

SEITZ, Chancellor: Plaintiff-trustee ("trustee") filed this complaint for instructions as to its duties under the will of Albert T. Hanby ("testator").

The testator, who died in 1947 while a resident of Pennsylvania, left a will which provided in pertinent part as follows:

"THIRD: All the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever kind and character and wheresoever situate, I give, devise and bequeath unto my Trustee hereinafter named, to pay the income therefrom unto my wife, Cecil DeClyne Hanby, for and during the term of her natural

life, together with certain insurance policies already made to her as beneficiary.

"Upon the death of said wife, or should she predecease me, I give, devise and bequeath my estate as follows":

(There follows bequests varying in amount from $1,000 to $2,500, totaling $14,500, to charitable organizations.)

"I give, devise and bequeath the farm I now own, Hanby's Corner, New Castle County, Delaware, together with all improvements and houses thereon erected, to the Security Trust Company of Wilmington, Delaware, as Trustee, for religious, charitable, educational, beneficial, social and recreational purposes, for the poor and needy, and for all children in the State of Delaware, to be known as the Albert T. Hanby and Cecil Hanby Foundation, or cognate title containing our names. To maintain, improve, and keep in proper condition the said tract of land for the purposes hereinbefore mentioned, no part thereof at any time to be sold or partitioned.

"FOURTH: All the rest, residue and remainder of my estate, I give, devise and bequeath unto the Security Trust Company of Wilmington, Delaware, as Trustee, for the uses and trusts herein mentioned."

"SEVENTH: I direct that this trust be governed by a Board of Governors consisting of a representative from each of the following: the Most Worshipful Lodge of Ancient Free and Accepted Masons of Delaware, the Grand Chapter Royal Arch Masons of Delaware, the Grand Council Royal and Select Masters, Delaware Conclave No. 22 of the Red Cross of Constantine, and St. John's Commandery Knights Templar of Delaware, to manage the trust herein created."

The testator's widow elected to take against the will and was awarded her statutory share of the husband's personalty pursuant to Pennsylvania law. In an action in this court, it was determined that the widow's Pennsylvania election constituted an election on her part as to the testator's Delaware real estate. Thus, it was decreed that

she took a one-third interest for life in her husband's Delaware realty. *Security Trust v. Hanby*, 32 *Del.Ch.* 70, 79 *A.2d* 807. By agreement and implementing order, her interest was set aside for her use by allocating her a residence on a portion of the farm which the testator owned.

The testator's estate consisted of about $250,000 in cash and securities plus the farm and certain life insurance policies payable to his widow. The widow's election acted as a refusal on her part to accept any income from the trust. After honoring the election and paying specific legacies and expenses, the residue of the personal estate of the testator was paid over to the trustee for the charitable purposes set out in Items Third and Fourth of the will.

The trustee has continued to administer the estate. It showed a value in the personalty as of January 31, 1962 of $376,588.86 and a trust realty valuation of $382,000. The income from the trust has of course been accumulated.

The trustee's complaint for instructions was prompted by certain ambiguities in the testator's will which concern the creation and administration of the charitable trust.

The nature of the issues raised required the trustee to join as defendants the individuals who constituted the Board of Governors ("Board") as identified in Item Seventh of the will. Because a charitable trust was involved, the Attorney General was also named as a defendant.

The parties have submitted the case for decision on an agreed statement of facts. The representatives of the Board have stated their contentions with respect to the proper construction of the will, and the trustee, at the court's instruction, has briefed the "opposite" position. In fairness, I should say that the trustee indicates a "personal" preference for the views advanced by the Board. Because both sides of the issue were presented, the Attorney General took no active position.

The first and basic question is as to what the testator intended the functioning relationship to be between the trustee and the Board.

The Board states in its brief that the testator intended it to manage and control the charitable trust while the trustee was to manage the trust funds and maintain and improve the Hanby farm. The position advanced by the trustee is that it is not only granted the power to administer the trust estate but also is instructed to define the trust framework and then make funds available to accomplish the trust purpose.

The court is not confronted with any possible construction which would be contrary to law. Consequently, the sole objective is to attempt to ascertain what the testator intended by what he said in his will. I therefore turn to the language of the will.

■ Insofar as pertinent the will recited that all of the testator's residuary estate was transferred to the trustee to pay the income to his wife for life. Upon her death, the farm was devised to the trustee for the stated charitable purposes. It was also stated that the trustee was to "maintain, improve, and keep in proper condition the tract of land for the purposes hereinbefore mentioned." It was then provided that the remainder of his estate, after honoring certain bequests, was to be held in trust by the trustee for the purposes stated in the will. The basic problem here is created by Item Seventh in which the testator directed "that this trust be governed by a Board of Governors, consisting of a representative from each of the following: [five positions in the various Masonic organizations] to manage the trust herein created."

What was the scope of the power conferred upon the trustee? It seems clear from the will that the trustee was to have control over investment policy as well as custody of the property, both real and personal. However, it must be determined what the testator meant when he said that he desired the trust to be governed by a Board of Governors who would manage the trust created in the will. The nature of the Foundation, the personnel of the Board and the stated charitable purposes combine to suggest most strongly that the testator wanted the Board to implement the trust. In other words, the testator intended the trustee to perform a "normal" trustee's function of investing the assets and providing for the maintenance of the property which is to be used to implement the testamentary objectives. The

testator, considering his Masonic background, obviously wanted the Board's personnel to be responsible, within the limitations of the will, for defining and administering this most worthy trust.

The trustee is therefore instructed that it will have custody of the trust assets with a duty to invest the trust funds. In contrast, the Board of Governors will have the sole responsibility to determine the policy to govern the administration of the Foundation to be located on the farm. To that end, the Board will have power to adopt reasonable rules and regulations which are consistent with the testamentary intent. It will also be entitled to receive the net income from the trust for the indicated purposes. Whether the Board will want or need to adopt the corporate form to carry out its function adequately is a matter for it to consider.

 The next question raised is whether the trust principal may be invaded, presumably without court order, for purposes of implementing the objectives of the trust. Item Fourth provided that the rest of the estate was held in trust "for the uses and trusts herein mentioned". I agree with the New Jersey Court in *Trustees of Alexander Linn Hospital Ass'n v. Richman*, 46 N.J.Super. 594, 135 A.2d 221, where it was said in a charitable trust context that "it is desirable that the trust fund remain intact if it is at all possible." Since this is to be a perpetual charitable trust, the issue should be resolved against the view that the power to invade principal was intended to be created under the language of the present will. I emphasize that integrity of the corpus must be preserved if the plans of the testator are to be systematically met. I express no opinion as to whether the court could or would authorize an invasion of corpus under any circumstances. Compare *Trustees of Alexander Linn Hospital Ass'n. v. Richman*, above.

I therefore conclude that the administration by the Board of Governors must always be subject to the limitation that its program is being financed by the income from the trust. A related question may arise as to whether income not used in any year, may be available for use in subsequent years. It would seem desirable and would lend greater flexibility to this trust to permit the Board of Governors to cause income to be accumulated where that seemed desirable. I

therefore conclude that unexpended income in any one year may thereafter be subject to use in implementation of some program adopted by the Board of Governors.

 The next issue posed is as to when the beneficial operation of the trust should be commenced. The parties are in disagreement as to whether they should await the death of the testator's widow or should proceed at once with some aspect of the operation. Had the widow elected to take under the will she would have been entitled to the income from all the real and personal property for life. In that event, the charitable trust would not have commenced to operate until the widow's death. That was the scheme obviously visualized by the testator. Should the commencement of the operation of the charitable trust be changed because the widow's election permits an earlier commencement date? It is true that the trust would have commenced at the testator's death had his wife predeceased him but that does not avoid the necessity of judicially finding the testator's intent under the facts as they have in fact developed.

The widow's election to take against the will substantially reduced the corpus of the trust. In a very practical sense, delaying the commencement of the operation of the charitable trust until the widow's death will permit, and indeed has permitted, the trust corpus to be increased. This is vitally important where a farm is presumably to be converted into an institution which must be maintained from the net income available from the personal property held in trust. I therefore conclude that the charitable trust was not intended to and does not in fact come into active operation until the death of the widow. Until that time the income from the trust will be accumulated as additions to corpus. It will not thereafter be considered as income.

After the widow's death it will be up to the Board to determine whether or not it desires immediately to commence active operation of the Foundation visualized by the testator. This decision is, as I view it, part of the management function to be discharged by the Board. In this connection, I should say that I am satisfied that it is within the scope of the powers of the Board to determine when any or all of the activities listed in Item Third can and should be offered.

██ The next request for instructions is as to what criterion is to be used to establish who are "the poor and needy". The court concludes that the Board by appropriate rules and regulations is entitled to set up some reasonable standards to implement the quoted provision of the will. As long as they are reasonable, they are not to be questioned in any other place. The trustee will have no duty in connection with this issue. The court will not at this time presume to tell the Board what such standards should be.

██ Finally, the issue is posed as to whether the Board is to have any control as to how the land in the trust is to be maintained and how and in what manner the tract is to be improved. I think the language of Item Third requires the trustee to exercise an independent duty to maintain the land and buildings and I also believe that the final decision as to whether the property is to be improved must rest with the trustee. However, I believe that a reasonable allocation of responsibility would suggest that recommendations for substantial improvements should normally be expected to come from the Board.

I suggest that it would be desirable and entirely reasonable for the trustee and the Board to adopt a joint statement incorporating their specific understanding concerning operational responsibilities so that there will be no gap or lack of attention due to a misunderstanding. In view of my conclusions herein it is not necessary to express any opinion with respect to the doctrine of cy pres.

Present order on notice.