9 A.3d 607 (2010)
417 N.J. Super. 269
Joseph MARIONI, Plaintiff-Appellant/Cross-Respondent,
v.
ROXY GARMENTS DELIVERY CO., INC. a/k/a Roxy Garments Delivery Co.; Bert Miller; Joel Heier; John Lindner; John J. Cummings; Anthony J. Davis; Cummings & Davis; Sylvan Learning Systems, Inc., a Maryland corporation; Sylvan Learning Centers, LLC, a Delaware limited liability company; Catapult Learning LLC, a Delaware limited liability company; and M & H Consulting Corp., a Florida corporation, Defendants, and
94 Broadway, Inc., a New Jersey Corporation, Defendant-Respondent/Cross-Appellant. and
94 Broadway, Inc., and John Lindner, Third-Party Plaintiffs,
v.
Roxy Garments Delivery Co., Inc. a/k/a Roxy Garments Delivery Co.; Estate of Bert Miller; Joel Heier; John J. Cummings; Anthony J. Davis; Cummings & Davis; and General Land Abstract Company, Third-Party Defendants.
Docket No. A-1492-09T3
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2010.
Decided December 9, 2010.
*608 John J. Curley argued the cause for appellant/cross-respondent (John J. Curley, LLC, attorneys; Mr. Curley, of counsel; Jennifer J. Bogdanski, Jersey City, on the brief).
James P. Rhatican, Roseland, argued the cause for respondent/cross-appellant (Connell Foley, LLP, attorneys; Mr. Rhatican, of counsel and on the brief).
Before Judges FISHER, SIMONELLI and FASCIALE.
The opinion of the court was delivered by
FISHER, J.A.D.
Previously, we reversed the denial of plaintiff's application for specific performance and remanded for an adjustment of the compensation to be paid by plaintiff to regain the propertya task complicated by the fact that the interloping purchaser had substantially renovated and leased the property. We reverse again because the trial judge's final adjustment required plaintiff to pay an entrepreneurial profit inconsistent with the interloper's position as a constructive trustee.
In 1998, plaintiff Joseph Marioni contracted to buy real property in Jersey City from third-party defendant Roxy Garments Delivery Co., Inc. Prior to the closing date, Roxy breached the contract by selling the property to 94 Broadway, Inc. (Broadway). Marioni filed a complaint in the Chancery Division seeking both specific performance and damages. Shortly after suit was filed, the Chancery judge at the time granted summary judgment dismissing Marioni's claim for specific performance and transferred the action to the Law Division for resolution of the damages claim; we denied Marioni's motion for leave to appeal.
Approximately two years later, final judgment was entered and Marioni appealed, again seeking our review of the dismissal of his claim for specific performance. We reversed, holding that the contract between Marioni and Roxy was valid and enforceable and that Broadway was not a bona fide purchaser for value because it had actual and constructive knowledge of the Marioni-Roxy contract. Marioni v. 94 Broadway, Inc., 374 N.J.Super. 588, 601, 616, 866 A.2d 208 (App.Div.), certif. denied, 183 N.J. 591, 874 A.2d 1109 (2005). We determined that Broadway's knowledge of Marioni's contract put Broadway in the position of a *609 constructive trustee. Id. at 621-22, 866 A.2d 208; see Pomeroy, Specific Performance of Contracts § 465 (3d ed. 1926). Absent undue hardship in light of the evolving circumstances, we held Marioni was entitled to specific performance and remanded to the Chancery Division with instructions to "reassemble Humpty Dumpty." Marioni, supra, 374 N.J.Super. at 622, 866 A.2d 208. In other words, acknowledging that more than three years had transpired during which Broadway had repaired, renovated and leased the property, we directed the Chancery judge to determine whether equitable relief would be oppressive or create an undue hardship in light of any changed circumstances.
After a five-day trial, the Chancery judge decreed specific performance, subject to further proceedings to equitably adjust the original contract price of $170,000which Marioni had agreed to pay Roxynow to be paid by Marioni to Broadway. In his oral decision, the judge correctly recognized his goal was to place the parties, to the extent possible, in the same positions they would have occupied had the Marioni-Roxy contract been performed as originally required. The judge correctly observed that equitable principles prohibit a constructive trustee from profiting and that Broadway should receive no entrepreneurial profit as a result of its interim wrongful possession of and dominion over the property.
With these principles as a guide, the judge increased the purchase price from $170,000 to $579,155.69. In reaching this result, the judge considered numerous factors. First, he awarded Broadway six percent interest on the contract price, compounded annually, yielding an interest factor of $85,617.13, which raised the purchase price to $255,617.13. Second, the judge found the value of the property increased by $790,000 over the five-year period due to both market conditions and physical renovations to the property made by Broadway. He arrived at this by subtracting the stipulated value of the property without renovations ($480,000) from its stipulated value as renovated ($1,270,000). The judge also found, however, that Marioni would be required to expend $50,000 to alter Broadway's renovations so that Marioni could utilize the property for his own particular interests.[1] Accordingly, the judge added $740,000 to the purchase price. Third, the judge added three operating costs paid by Broadway that Marioni would have paid had he been in possession, namely, the cost of maintaining insurance, property taxes and mortgage interest payments totaling $71,018.56. This raised the purchase price to $1,026,635.69. Lastly, the judge found Broadway was not entitled to $487,500 in rents collected from its tenantbecause as trustee, Broadway collected those rents on Marioni's behalfthus reducing the purchase price to $579,155.69. Restated in ledger form, the judge adjusted the original $170,000 purchase price, which Marioni would have paid Roxy but for the inequitable conduct that generated this suit, as follows:

 Contract Price: 170,000.00
 Interest: +85,617.13
 Increase in value: +790,000.00
 Less required alterations: -50,000.00

*610
 Insurance +33,779.00
 Taxes +24,373.00
 Mortgage interest +12,866.56
 ____________
 Gross adjusted contract price 1,026,635.69
 Rents -487,500.00
 ____________
 Net adjusted contract $579,155.69[2]
 price

The judge also denied Marioni's request for $107,000 in fees incurred from storing his artwork in alternate locations in the interim.
On appeal, Marioni argues the judge erred in adjusting the purchase price by including the increase in the property's market value rather than restricting Broadway's award solely to its base investment. Marioni also argues he should have been awarded damages to compensate for expenditures incurred in storing his artwork elsewhere in the interim.
In fashioning relief, the Chancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case. Salorio v. Glaser, 93 N.J. 447, 469, 461 A.2d 1100 (1983), cert. denied, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983); Mitchell v. Oksienik, 380 N.J.Super. 119, 130-31, 880 A.2d 1194 (App.Div.2005). Equitable remedies "are distinguished by their flexibility, their unlimited variety," and "their adaptability to circumstances." Salorio, supra, 93 N.J. at 469, 461 A.2d 1100. This general approach requires consideration of three specific components. First, the facts the judge adopts in an equity case, like any other non-jury case, are entitled to our deference "when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). Second, in drawing conclusions from those facts, the Chancery judge is required to apply accepted legal and equitable principles; no deference is afforded in this regard. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995); In re Estate of Shinn, 394 N.J.Super. 55, 66, 925 A.2d 88 (App.Div.), certif. denied, 192 N.J. 595, 934 A.2d 637 (2007). And third, in fashioning an appropriate equitable remedy to fit the particular circumstances, we will decline to intervene absent an abuse of discretion, see Sears Mortgage Corporation v. Rose, 134 N.J. 326, 354, 634 A.2d 74 (1993), or where the judge's conclusions prove inconsistent with his own findings of fact, VRG Corporation v. GKN Realty Corporation, 261 N.J.Super. 447, 454, 619 A.2d 251 (App. Div.1993), rev'd on other grounds, 135 N.J. 539, 641 A.2d 519 (1994). In turning to this third aspect, we conclude the remedy imposed was inconsistent with the directions provided in our earlier opinion regarding Broadway's role as constructive trustee; indeed, the judge similarly found that Broadway should not profit in any way from having purchased the property in the face of Marioni's prior contract to purchase. Because the judgment under review included an award of profit in Broadway's favor, we are constrained to reverse.
The judge's findings in quantifying the various monetary elements incorporated in the final judgment were thoroughly supported by evidence in the record. The judge also applied correct equitable principles when he held that Broadway was not entitled to profit due to its own wrongdoing in depriving Marioni of the property he had contracted to buy. The Chancery judge, however, mistakenly exercised his *611 discretion in formulating a remedy by allowing Broadway the value of the property as enhanced by its renovations; Broadway was entitled to be reimbursed for the funds it expended in renovating the property, but it was not entitled to the value that the property had been increased by those renovations.
This particular disputed element of the award has been referred to as entrepreneurial profit, which is the amount of profit an investor expects to receive by investing in a piece of real estate and is calculated as the difference between the total of "the cost of acquiring land plus ... the cost of constructing an improvement" minus "the improved property's market value." Westwood Lanes, Inc. v. Garwood Borough, 24 N.J. Tax 239, 250 (2008); see also BASF Corp. Coating & Ink Div. v. Belvidere Town, 23 N.J. Tax 551, 570 (2007). More simply stated by Broadway's appraisal expert at trial, entrepreneurial or "residual" profit is measured by the final total value of a property minus the funds expended by the purchaser in purchasing and improving the property.
Applying this concept, any amount added to the total due from Marioni to Broadway for the purchase of the property after accounting for Broadway's expenditures (its hard costs) results in an award of entrepreneurial profit to Broadway. Broadway, as trustee, is not entitled to such a profit; plaintiff, as the beneficiary of the constructive trust created by Broadway's wrongful conduct, is owed any and all such benefits. Bogert, The Law of Trusts and Trustees, § 862 at 63, 70 (Rev.2d ed. 2006). It was therefore improper to increase the purchase price due from Marioni to reflect any gain in the property's value even if brought about by Broadway's expenditure of funds to improve the property. Rather than using the sum of $790,000 in adjusting the purchase price, the court should have added only Broadway's base investment in the property, that is, the cost of renovations. This mistake resulted in Broadway's receipt of an entrepreneurial profit of $394,117; that is, the enhanced value of $790,000 minus Broadway's renovation expenses of $395,883.
Adding Broadway's base investment (acquisition and renovation costs) plus the award of insurance, taxes and mortgage interest to the purchase price returns Broadway to the position it would have been in had title rightfully transferred to Marioni instead of Broadway, and ensures that Broadway does not receive any entrepreneurial profit from purchasing the property from Roxy with knowledge of Marioni's contract.[3] Thus, we reverse and remand for the entry of judgment in the amount of $185,018.69, calculated as follows:

 Contract Price: 170,000.00
 Interest: +85,617.13
 Broadway's expenditures: +395,883.00
 Less required alterations: -50,000.00
 Insurance +33,779.00
 Taxes +24,373.00
 Mortgage interest +12,866.56
 ___________
 Gross adjusted contract price 672,518.69
 Rents -487,500.00
 ___________
 Net adjusted contract price $185,018.69

Although we commend the Chancery judge for his prodigious efforts in restoring Humpty Dumpty to his original condition, we are constrained to conclude that he mistakenly determined that Marioni should compensate Broadway for the amount to which the property's value was *612 enhanced as a result of Broadway's renovations.
Marioni lastly argues that the equitable relief to which he is entitled should include reimbursement for his storage fees. We remand for further proceedings on this point. In rejecting Marioni's request for an award of storage fees, the judge erroneously felt constrained by our mandate. In previously remanding, we recognized that circumstances had changed and expressly stated that the Chancery judge "should look with liberality upon any applications to amend the pleadings" and, further recognized, that we did "not intend to limit the future proceedings in this action solely to those claims that had been pleaded previously." Id. at 621. We neither expressed nor implied any limitation on the pursuit of alternate or consequential claims and remedies. See Bubis v. Kassin, 353 N.J.Super. 415, 427-28, 803 A.2d 146 (App.Div.2002). Even though the judge provided other comments regarding the storage fees that have been urged as a basis for our affirmance of this aspect of the judgment, we nevertheless reverse and remand for reconsideration because our close examination of the record suggests the judge felt constrained by his mistaken view of the scope of our mandate and offered those comments about the merit of that claim more as an afterthought.
Reversed and remanded for proceedings in conformity with this opinion. We do not retain jurisdiction.
NOTES
[1] Marioni, an artist, contracted to purchase the property for use as a residence as well as a studio and storage facility for his artwork. He described in great detail why this particular property was ideal both geographically, because of its accessibility to New York City, and structurally, because of its high ceilings and open space. To his dismay, upon wrongfully purchasing the property from Roxy, Broadway renovated the property for use as office space, which included the installation of drop-ceilings and wall partitions, effectively frustrating Marioni's plans.
[2] These calculations result in a difference of $20 from what the judge found that is attributable to clerical error.
[3] For the same reason, we reject Broadway's cross-appeal for reimbursement of any fees and costs associated with management of the property.