**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3678-22
A-3686-22

IN THE MATTER OF THE
ESTATE OF BYUNG-TAE OH,
deceased.

_____

Argued February 5, 2025 – Decided February 25, 2025

Before Judges Gummer, Berdote Byrne, and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000018-13.

Won Ki Oh, appellant in A-3678-22 and respondent in A- 3686-22, argued the cause pro se.

William D. Grand argued the cause for Hyung Kee Oh, respondent in A-3678-22 and appellant in A-3686-22 (Greenbaum, Rowe, Smith & Davis LLP, attorneys; William D. Grand, Luke J. Kealy and Olivier Salvagno, of counsel and on the briefs).

PER CURIAM

We return once again to this brother-against-brother probate litigation about the New Jersey assets of the estate of Byung-Tae Oh, having considered

aspects of the litigation in two prior opinions: In re Estate of Oh, 445 N.J. Super. 402 (App. Div. 2016), and In re Estate of Oh, No. A-2760-18 (App. Div. Mar. 23, 2021). Plaintiff Won Ki Oh now appeals from June 19, 2023 orders granting the court-appointed administrator's motion to be discharged and denying plaintiff's cross-motion for the release of funds from an escrow account and to require the administrator or another person to continue to search for assets. Defendant Hyung Kee Oh appeals from an August 31, 2022 order issued on remand awarding plaintiff counsel fees and costs.[1] Perceiving no error or abuse of discretion, we affirm the June 19, 2023 orders. Because the judge did not follow all of our directions on remand, we vacate the August 31, 2022 order awarding plaintiff counsel fees and costs and remand for further proceedings regarding plaintiff's fee application.

I.

Given that the parties are well familiar with the extensive factual and procedural background of this matter, we need not detail that background in full in this opinion and instead focus on information directly related to these appeals.

---

[1] We consolidated these back-to-back appeals for purposes of issuing a single opinion.

Byung-Tae Oh (decedent) was a resident of the Republic of Korea. He died intestate in Seoul on February 6, 2012. He was survived by his wife and his three children: plaintiff, defendant, and a daughter. At the time of his death, decedent's estate was valued at approximately $31,000,000. Decedent's primary asset was a Seoul-based real estate and construction company of which he was the majority shareholder and chief executive officer.

Defendant and his wife came to the United States in 1992. In May 1999, defendant established in New Jersey a real estate and construction company called B&H Consulting and Development, LLC (B&H). Defendant was the managing member of B&H. On December 8, 2001, decedent wired $900,000 from his personal Korean bank account to B&H's corporate bank account.

In January 2013, plaintiff filed a lawsuit in Korea to determine the value of decedent's estate and the inheritance to which each beneficiary of the estate was entitled. He also filed a verified complaint in the Probate Part of the Chancery Division of the Superior Court of New Jersey. In that complaint, plaintiff asserted decedent had an ownership interest in certain property located in New Jersey. Describing decedent as a member and partial owner of B&H, plaintiff contended decedent had made a $2.2 million capital contribution to B&H. He also claimed decedent had formed and made capital contributions to

another New Jersey-based company defendant in part owned and had made "substantial gifts" to defendant and his wife. Plaintiff sought the appointment of a "limited administrator" with the authority, among other things, to "marshal and administer the New Jersey assets of the [e]state." Defendant denied decedent had any assets in New Jersey and asserted decedent's $900,000 transfer was a gift to him he had used as part of the start-up money for B&H.

At the end of a contentious discovery period, both parties moved for summary judgment. The first judge assigned to the case denied defendant's motion and granted summary judgment in plaintiff's favor, finding plaintiff had successfully demonstrated the $900,000 transfer was an investment in B&H, not a gift to defendant. The judge held the estate had a 40.8% interest in B&H, representing decedent's ownership interest. The judge appointed an administrator of the estate "in New Jersey," authorizing him to "perform all acts of estate administration, including . . . marshaling the assets located in New Jersey"; obtaining certain information and accountings from defendant and his wife; filing a lawsuit, if necessary; and "filing all necessary tax returns as required by law and arrange for payment of any gift taxes, New Jersey and federal estate taxes that may be due with respect to the [e]state's New Jersey

assets . . . ." Defendant appealed from the order granting plaintiff summary judgment. We affirmed the order. See In re Est. of Oh, 445 N.J. Super. at 410.

While that appeal was pending, the judge issued an order on February 3, 2015, requiring the estate to advance $75,000 to the administrator to fund interim forensic accounting, investigation, and legal services required by the administrator. Plaintiff moved to compel the estate's beneficiaries to consent to the withdrawal of funds from the banks holding the estate's assets. The judge denied that motion without prejudice.[2] Even though he was not required to do so, plaintiff subsequently made that $75,000 payment to the administrator.

On February 18, 2015, the judge granted defendant's motion for entry of a confidentiality order, which limited the dissemination of documents provided by the administrator to the parties to the lawsuit. In a February 6, 2017 order, the judge found plaintiff had violated the confidentiality order in filing criminal complaints against defendant in Korea and granted defendant's motion for sanctions. The judge issued a modified confidentiality order on February 28, 2017, and in a March 16, 2017 order, required plaintiff to pay $23,434.40 of defendant's counsel fees.

---

[2] Plaintiff did not submit a copy of his motion papers or the transcript of the judge's September 10, 2015 decision.

A-3678-22

In January 2016, the administrator filed a lawsuit in the Chancery Division against defendant and others, alleging, among other things, defendant had not complied with the administrator's document demands and had continued to operate B&H with no regard for the estate's interest in the company. The administrator voluntarily dismissed that action in September 2017.

In June 2016, defendant moved to limit the administrator's authority and to stay his activities pending rulings from the Korean court. The administrator moved for a second interim fee award, asking the judge to "direct the [e]state, through its duly designated representative in the Republic of Korea, or, in the alternative, the parties to this litigation," to advance the administration an additional $75,000. Plaintiff cross-moved to compel defendant to fund the administration of the estate and to reimburse plaintiff for the $75,000 he had paid.

In a written opinion and orders entered on August 10, 2016, the judge denied defendant's motion and granted the administrator's fee application. As for the source of that payment, the judge in a separate order denied plaintiff's cross-motion and held:

> As before, this obligation must be funded by the [e]state. It is the [e]state's obligation to do so, as this court has affirmed several times in the past. It is not the individual obligation of any beneficiary of the

6

[e]state. Relief directly from the Estate can be sought in the Republic of Korea, where such remedy is available. The Administrator may also seek to realize value from the [e]state's interest in the New Jersey entity, B&H, as a means of funding [e]state administration here in New Jersey. It is apparently doing so in the ongoing Chancery action. But this court at this stage will not require funding by individual beneficiaries of the [e]state.

[(Footnote omitted).]

Paragraph one of the order granting the administrator's motion provided: "the [e]state . . . , through its duly designated representative in the Republic of Korea, as the case may be, shall advance the additional sum of $75,000 to the [a]dministrator in order to replenish the administrative fund previously established [in the February 3, 2015 order]." Paragraph three of that order authorized the administrator "to make payment of the fees and costs awarded in Paragraph 2 hereof from any remaining funds on hand that are held in trust by the [a]dministrator pursuant to the [February 3, 2015 order] or from any replenishment payment made pursuant to Paragraph 1 hereof." Plaintiff did not appeal these orders.

Even though the judge had held the estate was responsible for the payments to the administrator, defendant advanced the administrator the additional $75,000. In a later-submitted certification, defendant explained:

> Plaintiff had already previously paid an equivalent amount . . . . The Administrator asked that I arrange for the [e]state to pay the additional $75,000 that was still outstanding. I agreed to pay that amount, but I expressly stated that the obligation belonged to the [e]state, and I reserved the right to seek reimbursement from the [e]state and/or [p]laintiff.

The record is devoid of any evidence plaintiff or defendant sought reimbursement of their voluntary payments to the administrator from the estate by filing an application with the Korean court, which had jurisdiction over the vast majority of the estate's assets.

In 2017, the Korean court entered judgment, finding the estate had a 40.8% interest in B&H. The Korean court held decedent had not given defendant certain inter vivos gifts alleged by plaintiff. In 2018, a Korean appellate court rejected plaintiff's appeal of that judgment, and the Supreme Court of Korea affirmed that decision. As a result of that ruling, of the estate's 40.8% interest in B&H, 20.15% was awarded to decedent's wife, 10.60% to his daughter, 7.75% to plaintiff, and 2.27% to defendant.

On January 8, 2018, the administrator issued a report in which he found no evidence: the estate had assets in New Jersey other than its interest in B&H, decedent had made any inter vivos gifts to anyone in New Jersey, or defendant had engaged in malfeasance in his management of B&H. He concluded the

8

estate's equity in B&H as of December 31, 2016, was $1,224,321.93. He determined that by making a $1,200,000 capital contribution to B&H, defendant would "restore his deficit capital account" and "also restore to B&H's balance sheet an amount close to the [e]state's aggregate share of B&H's income from 2001 forward."

The administrator indicated that, subject to the court's approval of his report, defendant agreed to make a $1,200,000 capital contribution to B&H, which would be held in escrow (the B&H Escrow Account) and would constitute defendant's and his wife's "full and complete financial obligation in recognition of the [e]state's interest in B&H." Of that amount, $275,000 would be deposited in the trust account of the law firm representing defendant. Up to $250,000 of that amount would be used to pay the administrator's "administrative expenses and professional fees . . . incurred on the date on which the [a]dministrator's [r]eport [was] submitted to the [c]ourt for approval." On the court's approval of the report, "the remaining balance of the $275,000 w[ould] be used to pay all administrative expenses and professional fees . . . incurred subsequent to the date on which the [a]dministrator file[d] his motion for approval of his [r]eport." The $925,000 balance of the B&H Escrow Account would "be used to pay any federal estate taxes, and any interest and penalties thereon, that may be due and

owing from the [e]state in connection with the filing of a Non-Resident Estate Tax Return (Form 706-NA), if required." After those payments, "any remaining balance in the B&H Escrow Account [would] be immediately released from escrow and deposited into the general account of B&H."

The administrator moved for entry of an order approving his report, instructions regarding future estate administration, and a third allowance of fees and costs. Plaintiff opposed the motion and cross-moved for an amendment to the confidentiality order, production of documents underlying the report and proposed settlement, and time to review those documents. Plaintiff argued, among other things, the report was incomplete, the proposed settlement was premature and insufficient, and the administrator's findings about the estate's interest in B&H and other entities and decedent's inter vivos gifts were incorrect. Defendant and the administrator opposed the cross-motion.

After amending the confidentiality order, accepting additional submissions, and hearing argument, the judge on July 30, 2018, entered a written opinion and orders granting the administrator's motion and denying plaintiff's cross-motion. The judge found the administrator had the authority to settle claims on behalf of the estate and had acted "prudently and reasonably" on behalf of the estate, in fulfillment of his fiduciary duties. In an order, the judge

10

approved the administrator's report; the settlement agreement between the estate, B&H, and defendant as memorialized in the report; and granted an award of fees and costs to be paid from the B&H Escrow Account as described in the report. Consistent with a recommendation made by the administrator in the report, the judge also directed that any non-resident federal estate tax return for the estate or any other similar tax form that might be required "should not be finalized or filed by the Administrator or the person he may designate" until a report was issued by a special administrator appointed by a Hawaiian court pursuant to a petition plaintiff had filed in Hawaii in 2017 to determine whether decedent owned any probate assets in that state.

A month later, plaintiff moved pursuant to Rule 4:42-9 for an award of $1,441,139.96 in counsel fees he had incurred from the outset of the litigation through July 30, 2018. Defendant opposed the motion and cross-moved for a counsel-fee award of $1,440,557.90. Because the first judge to whom the case was assigned had retired, the case was reassigned to a different judge. That judge heard argument on the motions and requested supplemental submissions, including one from the administrator.

The administrator submitted a certification "outlining the various invoices of legal fees and costs of both parties, as well as his position on the benefit each

party provided to the estate." In that certification, the administrator opined the "beneficial nature of the legal services provided to the [e]state by [p]laintiff [ran] from the inception of the litigation through January 5, 2017, the filing date of [d]efendant's [n]otice of [m]otion for an [a]ward of [s]anctions on account of [p]laintiff's violation of the [c]ourt's prior [o]rder respecting confidentiality." He calculated that from September 2012 through January 5, 2017, plaintiff had incurred $1,049,589.14 in legal fees. The administrator opined the "beneficial nature of the legal services provided by [d]efendant to the [e]state [ran] from January 31, 2016, the filing date of the companion General Equity action, through September 2018." He calculated that during that time period, defendant had incurred $978,157.99 in legal fees and costs.

In a written order and opinion entered on January 14, 2019, the judge granted the motion and the cross-motion. The judge without explanation adopted the administrator's conclusions and awarded plaintiff $1,049,589.14 and defendant $978,157.99 in counsel fees and costs. Regarding plaintiff's motion, the judge explained:

> Plaintiff's action has benefited the [d]ecedent's estate by proving that (1) [d]ecedent's $900,000.00 transfer was an investment in [B&H] as opposed to an inter vivos gift as [defendant] had alleged, and (2) [defendant] should make a capital contribution of $1.2 million to B&H. This capital contribution

> unquestionably provides a measurable benefit to the [d]ecedent's estate because it will restore B&H's capital deficit and recognize the [e]state's aggregate income of B&H for the past seventeen (17) years.

The judge held the fees and costs were awarded "in accordance with R. 4:43-9(a)(3)" and that they were to be "distributed out of the [d]ecedent's New Jersey estate assets." The judge did not explain what he meant by "[d]ecedent's New Jersey estate assets." The judge made no mention of the B&H Escrow Account and neither required nor authorized the use of that specially-designated account for payment of these counsel-fee awards.

Defendant appealed from the January 14, 2019 fee order, arguing it should be reversed because plaintiff's fee application was untimely and because the judge had failed to perform the analysis required by RPC 1.5(a). Plaintiff appealed from the January 14, 2019 fee order, parts of the February 28, 2017 modified confidentiality order, and the July 30, 2018 order. Plaintiff argued the second judge had correctly awarded him counsel fees and incorrectly awarded counsel fees to defendant; the first judge had erred in deferring to the administrator's decision to settle with defendant, in denying his cross-motion for the production of documents related to the report, and in rejecting plaintiff's assertion the estate had an interest in another New Jersey entity; and the administrator was not a neutral party.

13

In a March 23, 2021 opinion, we affirmed the July 30, 2018 order in which the first judge had approved the administrator's report.  In re Est. of Oh, slip op. at 32.  We reversed the part of the January 14, 2019 order that awarded defendant fees, holding defendant had not taken "any action that benefited or assisted in the creation of the fund in court."  Id. at 24, 32.  We vacated the part of the January 14, 2019 order that awarded plaintiff fees and remanded the case for further proceedings regarding plaintiff's fee application.  Id. at 32.

We recognized plaintiff had benefited the estate by demonstrating the $900,000 transfer by decedent to B&H represented an investment in B&H and not a gift and by securing the appointment of an administrator who had obtained the $1,200,000 payment from defendant.  Id. at 29.  We concluded, however, the second judge had not conducted the "searching analysis," id. at 31, required by the Supreme Court in Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995), when he:

> fixed plaintiff's fee by adopting a date suggested by the administrator as the moment when plaintiff ceased providing a benefit to the estate and then adopting a dollar amount in the most conclusory of fashions by rigidly utilizing that date as the cut-off without analyzing the reasonableness of the various services occurring within that time frame.
>
> [Id. at 30-31 (footnote omitted).]

We remanded the case with the following directives:

> Because the rule does not permit an award of fees for services that did not benefit the estate, 7A Clapp & Black, § 1547, at 97, the judge should focus on those steps taken by plaintiff that actually benefited the estate and fix a reasonable fee for those steps based on the principles outlined in Rendine, RPC 1.5(a), and [In re ]Bloomer[, 37 N.J. Super, 85, 94 (App. Div. 1955)]. The judge should analyze the fees plaintiff seeks with a particular appreciation for the size of the recovery as compared to the fees sought; that is, no one would quarrel with the notion that it is unreasonable to spend $100,000 in fees to recover $50,000. The reasonableness of plaintiff's fee should be fixed through application of all the standards we have alluded to and, ultimately, by comparing the services to the results obtained.
>
> [Id. at 31-32.]

In a July 13, 2021 letter order, the judge directed the parties to "exchange written submissions regarding their respective positions" by September 30, 2021. After plaintiff failed to submit anything by that date, defendant moved to dismiss plaintiff's attorney-fee application. Plaintiff's counsel subsequently advised the judge in writing and at a conference that plaintiff intended to rely on the counsel-fee motion he previously had filed.

On August 31, 2022, the judge entered an order and written opinion denying defendant's motion and awarding plaintiff $1,049,589.14, the same amount he had awarded in the January 14, 2019 order. In denying defendant's

motion, the judge stated he had granted plaintiff's counsel additional time to file his written submission in light of "extraordinary circumstances" relating to damage Hurricane Ida had caused his office. The judge found plaintiff's ultimate submission to be in compliance with his July 13, 2021 order.

In his opinion, the judge reviewed the factors of RPC 1.5(a) and found they "weigh[ed] in favor of [p]laintiff's fee application." The judge repeated the factors set forth in Bloomer, 43 N.J. Super. at 416, and stated those factors also weighed in favor of plaintiff's application. Regarding our directive to compare the legal services provided to the results obtained, the judge stated the following:

> Plaintiff filed the initial complaint believing that [d]ecedent had made an investment into B&H instead of a gift to [d]efendant. The allegation was ultimately proven true. In filing the action, [p]laintiff benefited the estate. The [c]ourt explained this in greater detail in its [opinion] to [the o]rder dated January [14], 2019.

The judge again accepted the administrator's time frame as to when plaintiff's actions had supposedly benefited the estate. He did not explain why he had adopted those dates or analyze whether the legal services undertaken within them were for the benefit of the estate or whether the related charges for those services were reasonable.

On February 2, 2023, the administrator moved for an order granting him a final award of fees and disbursements, discharging him as administrator of the

16

estate, and designating defendant or his agent as a party having the authority to file a non-resident United States tax return if he or his agent determined the filing of the return was required. Plaintiff opposed that motion and cross-moved for reimbursement of the $75,000 he had paid to the administrator in 2015 from the B&H Escrow Account, payment of his counsel-fee award from the B&H Escrow Account, and an order requiring the administrator "or another designee to recoup or collect outstanding account receivable[s] on behalf of B&H for the benefit of the [e]state." Defendant opposed plaintiff's cross-motion and cross-moved to strike plaintiff's counsel's certification and to divest plaintiff of any interest he may have in the estate's New Jersey assets due to his alleged violations of the confidentiality orders.

At argument, the administrator pointed out we had affirmed the first judge's order approving the administrator's report, including the settlement that resulted in the creation of the B&H Escrow Account. He explained he recommended defendant be appointed to file the non-resident federal tax return for the estate because that task "required . . . a detailed knowledge of the worldwide assets of the decedent" and his appointment was limited to determining the estate's New Jersey assets. The administrator characterized plaintiff's cross-motion as an "attempt[] to relitigate the determinations

previously made by [the first judge], as well as affirmed by the Appellate Division." Defense counsel confirmed that "pursuant to a decision and judgment of the highest court in Korea," the estate's 40.8% interest in B&H "ha[d] been split amongst the beneficiaries already, and each beneficiary has a direct interest in B&H." Plaintiff's counsel did not dispute that statement.

On June 19, 2023, after hearing argument, the judge issued an oral opinion and orders granting the administrator's motion and denying plaintiff's and defendant's cross-motions. In his oral decision, the judge found "there is no doubt . . . that [the] July 30, 2018 decision resolved these issues." The judge referenced the first judge's finding that the administrator had "made conclusive determinations out of all material issues presented to him" regarding the estate's possible assets in New Jersey. The judge found the administrator had the authority to apply for the appointment of an agent to file the tax return and that the administrator's recommendation to name defendant as that person made "sense" because "defendant [was] suited to be able to resolve any of those tax issues and would have an obligation under the law to do so in a way that needs to be done for the estate." The judge held plaintiff had "no legal right" to be reimbursed the $75,000 or be paid counsel fees out of the B&H Escrow Account. The judge found the settlement agreement approved by the first judge in an order

we affirmed "explicitly sets forth how the escrow is to be managed . . . , holding it for tax reasons" and that the first judge had "made clear" any counsel fees awarded to a party could be collected from the estate and were "not the obligation of B&H or any individual beneficiary."

II.

Plaintiff appeals from the June 19, 2023 order granting the administrator's motion. He argues the administrator should not be discharged because the administrator failed to reveal "the total value of the estate," file the non-resident federal tax return, and collect outstanding account receivables and other funds purported belonging to B&H. Plaintiff also appeals from the June 19, 2023 order denying his cross-motion. He argues the judge erred in refusing to order the release of funds from the B&H Escrow Account to pay his $1,049,589.14 counsel-fee award and to reimburse him for the $75,000 payment he made in 2015. Defendant appeals from the August 31, 2022 counsel-fee order issued on remand. He argues the judge erred in denying his motion to dismiss and in failing on remand to correctly analyze plaintiff's entitlement to a fee award.

A.

We address plaintiff's appeal first. We note at the outset that decisions of the Chancery Division "are entitled to deference 'when supported by adequate,

19

substantial[,] and credible evidence.'" Tarta Luna Props., LLC v. Harvest Rests. Grp. LLC, 466 N.J. Super. 137, 153 (App. Div. 2021) (alteration in original) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "A Chancery judge has broad discretion 'to adapt equitable remedies to the particular circumstances of a given case.'" Ibid. (quoting Marioni v. Roxy Garments Delivery Co., Inc., 417 N.J. Super. 269, 275 (App. Div. 2010)).

A reviewing court shall not set aside the determination of the Chancery judge "absent an abuse of discretion, or where the judge's conclusions prove inconsistent with [his or] her own findings of fact." Ibid. "A court abuses its discretion 'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 154 (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)). We do not defer to a trial court's legal conclusions. Id. at 153.

N.J.S.A. 3B:14-18 provides "[a] fiduciary may be discharged from the further duties of his office by the court . . . . [T]he court may grant the discharge unless it will be prejudicial to the estate or persons interested . . . or for any other reason the discharge ought not to be granted." See Donaldson v. Borough of Madison, 88 N.J. Super. 574, 582 (Ch. Div. 1965) (finding discharge appropriate

20

where there was sufficient reason and "the discharge w[ould] not be prejudicial to the trust or persons interested").

Plaintiff contends the judge erred in discharging the administrator in the June 19, 2023 order because the administrator purportedly failed to "reveal the total value of the [e]state," file the non-resident federal tax return, and recoup assets that allegedly belong to B&H. That argument is based on the incorrect assertion the administrator had a duty to do all of those things. He didn't. Nothing in the May 8, 2014 order appointing him or any subsequently-issued order required him to determine the total value of an estate with a majority of assets located in Korea. The clear focus of the order appointing him was "marshaling" the New Jersey assets of the estate, including a determination of the estate's possible interest in certain entities, including B&H, and gifts the decedent allegedly had given to defendant and his wife. In the order appointing him, the judge gave him the authority, but not the obligation, to file tax returns.

In 2018, the administrator submitted a report detailing his forensic investigatory efforts, his conclusions, and the terms of a settlement he had reached with defendant regarding B&H on behalf of the estate. He moved for approval of that report. The judge granted that motion and entered on July 30, 2018, an order approving the report and giving instructions to the administrator

21

"or the person he may designate" regarding the filing of the non-resident federal tax return. We affirmed that order in its entirety in our 2021 opinion. In re Est. of Oh, slip op. at 20-22, 32. On that record, we perceive no abuse of discretion in the order discharging the administrator.

We also see no abuse of discretion in the denial of plaintiff's cross-motion in which he sought to use the B&H Escrow Account for the payment of his counsel fees and reimbursement of the $75,000 payment he voluntarily had made in 2015. The B&H Escrow Account was established as part of the settlement the administrator reached with defendant. The terms of that settlement were detailed in the administrator's 2018 report. The funds placed in the Account were expressly designated to be used towards paying the administrator's "administrative expenses and professional fees" and federal taxes the estate owed, if any, in connection with the filing of the non-resident federal tax form, with any remaining balance to be placed into the general account of B&H, in which plaintiff now has an ownership interest. The judge approved the administrator's report, which incorporated that settlement. And we affirmed the order approving the report, recognizing "an administrator has the statutory power 'to compromise, contest or otherwise settle any claim in favor of the estate . . . .'" Id. at 21 (quoting N.J.S.A. 3B:14-23(m)). The judge

correctly denied plaintiff's subsequently-filed cross-motion to use for his own purposes that specially-designated account, which had been created as part of a settlement approved in an order affirmed by this court.

For those reasons, we affirm the June 19, 2023 order granting the administrator's motion and the June 19, 2023 order denying plaintiff's cross-motion.

### B.

We now address defendant's appeal of the August 31, 2022 counsel-fee order issued on remand.

Plaintiff asserts defendant's appeal is untimely because defendant did not file his notice of appeal within forty-five days of entry of the August 31, 2022 order, citing Rule 2:4-1(a). Rule 2:4-1(a) requires, with certain limited exceptions not applicable here, "appeals from final judgments of courts . . . [to] be filed within 45 days of their entry." "Generally, an order is considered final if it disposes of all issues as to all parties." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (quoting Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 136 (2016)). "By definition, an order that does not finally determine a cause of action but only decides some intervening matter pertaining to the cause[,] and which requires further steps . . . to enable the court to

adjudicate the cause on the merits[,] is interlocutory." Ibid. (alterations in original) (quoting Moon v. Warren Haven Nursing Home, 182 N.J. 507, 512 (2005)) (internal quotation marks omitted).

The August 31, 2022 order clearly was not a final order and, thus, was not subject to the forty-five-day requirement. We know that from the substance of the order – it did not dispose of all issues as to all parties – and from what transpired after the judge entered the order. The administrator moved for, among other things, an order discharging him as administrator of the estate. Plaintiff cross-moved, seeking affirmative relief, and defendant cross-moved in response to plaintiff's motion. And if there was any doubt, in the June 19, 2023 order granting the administrator's motion, the judge identified that order as "the final order in this matter that concludes all issues and proceedings presently before the trial court in connection with this action." Plaintiff's untimeliness argument is without merit.

Defendant argues the judge erred in denying his motion to dismiss plaintiff's fee application, contending plaintiff's post-remand submission in support of the application was late and insufficient. That argument also is without merit. After our remand, the judge ordered the parties to "exchange written submissions regarding their respective positions" by September 30,

2021. Nothing in our court rules or caselaw prevented the judge from extending that deadline, especially when he found hurricane-related "extraordinary circumstances" had impacted plaintiff's counsel's ability to prepare a submission. In fact, "any order . . . which adjudicates fewer than all the claims as to all the parties . . . shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." Lombardi v. Masso, 207 N.J. 517, 534 (2011) (emphasis omitted) (quoting R. 4:42-2). And we perceive no abuse of discretion in the judge finding plaintiff's submission was sufficient for purposes of his letter order. That defendant chose to submit more did not render invalid plaintiff's submission.

Defendant again argues "it was inequitable to award legal fees to [p]laintiff." We already rejected that argument in our 2021 opinion and reject it again now. See In re Est. of Oh, slip op. at 29 ("We thus reject defendant's argument that plaintiff was not entitled to a fee award under Rule 4:42-9(a)(2)"). Our concern was not that the judge had awarded plaintiff counsel fees but with the reasonableness of the fees awarded and "whether the trial judge properly fixed the amount of fees he awarded to plaintiff." Id. at 30.

Defendant contends the order should be vacated because the judge on remand did not follow the directives set forth in our 2021 opinion and,

consequently, failed to cure the errors made when he first granted plaintiff's counsel-fee application. That argument has merit.

In our 2021 opinion, we held the judge erred in "fix[ing] plaintiff's fee by adopting a date suggested by the administrator . . . and then adopting a dollar amount in the most conclusory of fashions by rigidly utilizing that date . . . without analyzing the reasonableness of the various services occurring within that time frame." In re Est. of Oh, slip op. at 30-31 (footnote omitted). The judge did the same thing in his decision on remand. He again accepted without explanation or analysis the administrator's suggested time frame of plaintiff's purported beneficial acts.

We directed the judge to "focus on those steps taken by plaintiff that actually benefited the estate and fix a reasonable fee for those steps . . . ." Id. at 31. The decision on remand lacks that required focus and is devoid of any indication the judge reviewed the invoices submitted to determine whether any or all of the legal services performed during the assumed time frame benefited the estate. We understand the tedium a review of years of legal invoices entails. But that focused review is what is required to determine whether a party seeking a counsel-fee award benefited the estate in incurring those legal fees. See Rendine, 141 N.J. at 335 (holding a trial court considering a counsel-fee

26

application "should not accept passively the submissions of counsel" but instead must "evaluate [them] carefully and critically").

We also directed the judge on remand to "analyze the fees plaintiff seeks with a particular appreciation for the size of the recovery as compared to the fees sought . . . [,]" concluding "[t]he reasonableness of plaintiff's fee should be fixed through application of all the standards we have alluded to and, ultimately, by comparing the services to the results obtained." In re Est. of Oh, slip op. at 31-32. In addressing that factor on remand, the judge did little more than reference what he had said about it in his initial opinion, which we already had deemed insufficient. An award of over a million dollars in legal fees requires more than the conclusory statements offered by the judge. See Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 532 (2009) (explaining what a trial court should consider under RPC 1.5(a)(4)).

Because the judge did not follow all of our directives on remand, we vacate the August 31, 2022 order and remand the case, directing the judge (1) to review the entries of the invoices of legal services submitted by plaintiff; (2) analyze and explain whether and how the legal services performed benefited the estate; and (3) determine the reasonableness of the fees incurred, including an

analysis and explanation of whether and how the reasonableness of the fees incurred are supported by a comparison of the services to the results obtained.

## III.

In sum, we affirm the June 19, 2023 order granting the administrator's motion and the June 19, 2023 order denying plaintiff's cross-motion. We vacate the August 31, 2022 order awarding plaintiff counsel fees and costs and remand for further proceedings regarding plaintiff's motion for counsel fees consistent with this opinion. We have considered all of the parties' arguments on appeal and, to the extent we have not expressly addressed any of them, we have determined they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

28

A-3678-22