**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1854-23

PMG NEW JERSEY II, LLC,

      Plaintiff-Respondent,

v.

AMRIT INC., d/b/a CIRCLE
EXXON, SHAMSHER SINGH
RATHORE, KOMAL SINGH,

      Defendants-Appellants,

and

34 US-1 LLC d/b/a FUEL ONE,
INC. and JABBAR SINGH,

      Defendants.

_____

Argued December 10, 2024 – Decided April 30, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000084-23.

Patricia M. Love argued the cause for appellants (Hendricks & Hendricks, attorneys; Patricia M. Love, on the briefs).

Bruce S. Rosen argued the cause for respondent (Pashman Stein Walder Hayden, PC, attorneys; Bruce S. Rosen and Doris Cheung, on the brief).

PER CURIAM

Defendants Amrit, Inc., d/b/a Circle Exxon, Shamsher Singh Rathore, and Komal Singh (collectively, the Amrit defendants, Amrit, or defendants), appeal from a February 20, 2024 Chancery Division order granting summary judgment in favor of plaintiff PMG New Jersey II, LLC (PMG) and denying summary judgment to the Amrit defendants. We affirm.

I.

We view the facts established in a light most favorable to the Amrit defendants. See Friedman v. Martinez, 242 N.J. 449, 472 (2020).

This dispute concerns the right of first refusal (ROFR) to purchase a gas station located in New Brunswick. On March 4, 2012, PMG and the Amrit defendants entered into a Motor Fuel Supply Agreement (MFSA) in conjunction with the Amrit defendants' purchase of the gas station. The original MFSA did not contain an ROFR clause.

2

Over three years later, on April 24, 2015, the Amrit defendants and PMG amended the MFSA to include an ROFR clause, which stated:

> 39. Preemptive right.  If Purchaser[1] is the owner or lessee of the Premises, Seller shall have the following preemptive rights:
>
> If, at any time during the term of this Agreement Purchaser shall receive a bona fide offer from a third party (the "Offer") to purchase or otherwise acquire the Premises, Purchaser shall, before accepting said Offer, promptly send a copy of the Offer to Seller which shall have the preemptive right to purchase or otherwise acquire the Premises on the same terms and conditions as set forth in the Offer.  If Seller elects to exercise its preemptive right under this Section 36(a)(1), it shall do so by providing written notice to Purchaser within thirty (30) days following receipt of the offer and the closing shall take place within ninety (90) days thereafter (or at such later date as provided in the Offer).  If Seller does not exercise its preemptive right within the foregoing thirty (30) day period, Purchaser shall have the right to sell to the third party from whom it received the offer (and no other party, without again first giving Seller its preemptive right as provided in this Section 36(a)(1), on the same terms and conditions as set forth in the Offer (but not on different terms or conditions, without first giving Seller its preemptive right as provided in this Section 36(a)(1))[)].  If during the term, Purchaser is actively negotiating with a third party to sell the Premises, and within six (6) months following the expiration of the term, Purchaser enters into a definitive transfer agreement with said third party, Seller shall have a preemptive right to purchase or otherwise acquire the Premises, in accordance with

---

[1]  "Purchaser" refers to the Amrit defendants and "Seller" refers to PMG.

A-1854-23

the provisions contained herein, as though the definitive transfer agreement had been executed during the term and had constituted the Offer received by Seller on the last day of the term.

On May 2, 2018, the parties amended the MFSA contract term to December 31, 2027.

In 2022, the Amrit defendants negotiated the sale of the gas station with Jabbar Singh, president of 34 US-1, LLC, d/b/a Fuel One, Inc. (Fuel One). The Amrit defendants and Fuel One executed an Agreement of Sale (PSA) dated October 14, 2022. The PSA contemplated that Amrit would sell the gas station to Fuel One for $2,500,000. Rather than mention the ROFR between PMG and Amrit, paragraph 10(c) of the PSA, entitled "Representations by Seller," stated, in pertinent part, "[t]o the best of [Amrit]'s knowledge, there are no existing or claimed purchase contracts, purchase options, rights of first refusal or special assessments affecting the Property." The PSA did, however, require the Amrit defendants to provide Fuel One with the MFSA, which contained the ROFR language.

PMG obtained an unsigned copy of the PSA on January 17, 2023. After reviewing it, PMG found what they believed to be material misrepresentations, specifically with paragraph 10(c). PMG informed the Amrit defendants of the

A-1854-23

alleged misrepresentations and supplied them with copies of the MFSA containing the PMG ROFR.

In turn, Fuel One and the Amrit defendants amended their PSA on May 2 and May 4, 2023. The May 4 amendment added the following addendum to paragraph 10(c):

> To the best of Seller's knowledge, there are no existing or claimed purchase contracts, purchase options, rights of first refusal or special assessments affecting the Property except for ongoing Fuel Supply Agreements between Seller and PMG New Jersey II LLC which includes a right of first refusal on the sale of property in Addendum 1 dated April 24, 2015. There are no tenancies or rights of occupancy of any third parties.

PMG received a fully executed copy of the amendments from the Amrit defendants on May 8, and informed them that it was considering the offer and would respond to them within the contractual thirty-day window, which ended on June 8, 2023. On June 6, 2023, Jeff Bucaro, vice president of PMG, informed the Amrit defendants that PMG was exercising its ROFR under the same terms and conditions as expressed in the PSA and subsequent addendums.

When the Amrit defendants informed PMG of its intention to sell to Fuel One regardless of the ROFR, PMG filed a verified complaint and order to show cause to compel specific performance. After the Amrit defendants filed a motion for summary judgement, PMG opposed the motion and cross-moved for

summary judgment. The trial court dismissed the Amrit defendants' motion and granted PMG's motion, compelling the Amrit defendants to specifically perform under the contract by selling the gas station to PMG. The trial court determined "that PMG timely invoked its ROFR within the 30-day time period from delivery of the <u>final</u> 'bona fide' Offer" on May 8, 2023. The court found:

> the Fuel One offer did not ripen into one that was truly 'bona fide' until Amrit—pursuant to [the MFSA]— 'promptly' sent the Offer to PMG, which Amrit finally did by providing PMG with what turned out to be the fully executed Second Amendment . . . on May 8, 2023. In so doing, Amrit was . . . confirming its intention to sell the Property . . . and to assume responsibility for payment of termination penalties, if, PMG passed on the opportunity to purchase, Fuel One proceeded to purchase, and Amrit became obligated to honor PMG's entitlement to payment of termination damages.
>
> Having received the 'bona fide' Offer from Amrit in the form of the fully executed [s]econd [a]mendment that Amrit delivered to it on May 8, 2023, PMG had 30 days to exercise its ROFR by or before June 8, 2023. It did so by way of letter issued from Vice President, Jeff Bucaro, dated and delivered to Amrit and its counsel on June 6, 2023 . . . .

The Amrit defendants appealed, arguing that the trial court committed error by: rejecting the January 17, 2023 offer to PMG as invalid; finding that the May 8, 2023 offer to PMG contained a material modification; and finding that plaintiff did not waive their ROFR after receiving the May 8, 2023 offer.

6

II.

In reviewing a court's decision to grant or deny a motion for summary judgment, we apply the same standard governing the trial courts. Boyle v. Huff, 257 N.J. 468, 477 (2024) (citing Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). Under these standards, courts should grant a motion for summary judgment if they find that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

"When no issue of fact exists, and only a question of law remains, [appellate courts] afford[] no special deference to the legal determinations of the trial court." Boyle, 257 N.J. at 477 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

At the appellate level, "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co., 309 N.J. Super. 415, 420 (App. Div. 1998). We decide such purely legal questions without deferring to a lower court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995); see also Zaman v. Felton, 219 N.J. 199, 216 (2014).

A-1854-23

Courts "construe a right of first refusal provision under the same rules of construction as any other type of contract." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187 (App. Div. 2017) (citing St. George's Dragons, LP v. Newport Real Estate Group, LLC, 407 N.J. Super. 464, 482 (2009)). Therefore, our analysis is guided by "familiar rules of contract interpretation." Serico v. Rothberg, 234 N.J. 168, 178 (2018). "[G]eneral principles governing judicial interpretation of a contract" instruct that a "court's goal is to ascertain the 'intention of the parties to the contract . . . .'" Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000). To do so, the court must "examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 292 (App. Div. 2014) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115 (2006)) (internal quotation marks omitted).

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "'In a

word, the judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and [then] accord to the language a rational meaning in keeping with the express general purpose.'" Ibid. (quoting Owens v. Press Pub. Co., 20 N.J. 537, 543 (1956)). "[I]f the contract into which the parties have entered is clear, then it must be enforced as written." Serico, 234 N.J. at 178 (alteration in original) (quoting In re Cnty. of Atl., 230 N.J. 237, 254 (2017)); Barila, 241 N.J. at 616 (explaining that when the intent of the parties is "plain" and the contractual language is "clear and unambiguous" the court must enforce the agreement as written).

"A Chancery judge has broad discretion 'to adapt equitable remedies to the particular circumstances of a given case.'" Tarta Luna Props., LLC v. Harvest Rest. Grp., LLC, 466 N.J. Super. 137, 153 (App. Div. 2021) (quoting Marioni v. Roxy Garments Delivery Co., 417 N.J. Super. 269, 275 (App. Div. 2010)).

"[T]he right to specific performance turns not only on whether plaintiff has demonstrated a right to legal relief but also whether the performance of the contract represents an equitable result." Marioni v. 94 Broadway, Inc., 374 N.J. Super. 588, 599 (App. Div. 2005).

> [W]hen specific performance is sought, the court is
> required to do more than merely determine whether the

contract is valid and enforceable; the court of equity must also "apprise the respective conduct and situation of the parties," the clarity of the agreement itself notwithstanding that it may be legally enforceable, and the impact of an order compelling performance, that is, whether such an order is harsh or oppressive to the defendant, or whether a denial of specific performance leaves plaintiff with an adequate remedy.

[Id. at 600 (citations omitted).]

"[A]s a consequence of the remedy's equitable underpinnings, the party seeking specific performance 'must stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage.'" Ibid. (quoting Stehr v. Sawyer, 40 N.J. 352, 357 (1963)).

III.

We are unpersuaded by defendants' first argument that PMG waived its ROFR because PMG did not exercise the ROFR after receiving the PSA on January 17, 2023.

The terms of the ROFR are governed by the MFSA. The plain language of the MFSA states that

[i]f, at any time during the term of this Agreement [Amrit] shall receive a bona fide offer from a third party (the "Offer") to purchase or otherwise acquire the Premises, [Amrit] shall, before accepting said Offer, promptly send a copy of the Offer to [PMG] which shall

10

have the preemptive right to purchase or otherwise acquire the Premises on the same terms and conditions as set forth in the Offer.

Under the MFSA, once PMG receives a third-party "bona fide offer" from defendants, it has thirty days to exercise its ROFR.

The record shows that on October 14, 2022, the Amrit defendants accepted an offer from Fuel One to purchase the gas station in clear violation of the MFSA: "[Amrit] shall, before accepting said Offer, promptly send a copy of the Offer to [PMG] . . . ." (Emphasis added). The record also shows the Amrit defendants never informed PMG of Fuel One's offer before accepting it. We are satisfied that PMG's informal receipt of an unsigned copy of the PSA on January 17, 2023, neither satisfied the terms of the MFSA, nor triggered PMG's obligation under the MFSA to exercise its ROFR. We conclude there was no waiver.

The Amrit defendants next argue that they were not obligated to present the amended PSA to PMG as if it were a "bona fide offer" because the amendments were mere "tweaks," not changes to a "material term." We disagree.

11

The record shows that the addendum between the Amrit defendants and Fuel One changed the "terms and conditions" of the PSA by affirming the existence of PMG's ROFR. As stated by the trial court:

> the PSA needed to be amended to correct the misrepresentations made initially as to the existence of the ROFR, as well as affirmative confirmation of [defendants'] obligations for potential early termination penalties payable to PMG (including finalization of the early termination penalty payouts that would be required of [defendants] if its Fuel Supply Agreement with PMG was terminated as a consequence of any sale to Fuel One).

Because the "terms and conditions" of the PSA were amended to cure misrepresentations, the amended PSA served as a "bona fide offer" from Fuel One to the Amrit defendants as contemplated by the MFSA. We discern no error.

Finally, defendants contend that the thirty-day period for PMG to invoke its ROFR was triggered when PMG received the amended PSA from Fuel One on May 4, 2023. This contention, however, runs counter to the provisions of the MFSA. The MFSA states that "[Amrit] shall . . . promptly send a copy of the Offer to [PMG] . . . ." (Emphasis added). A plain language reading of the MFSA demonstrates that PMG was not required to invoke its ROFR until the Amrit defendants "promptly sen[t]" a copy of the amended PSA to PMG. Defendants

did not send a copy of the amended PSA until May 8, 2023. Therefore, PMG's right to exercise its ROFR did not expire until June 8. Because PMG invoked its ROFR on June 6, we find no error with the trial court's decision to grant PMG summary judgment and require specific performance.

To the extent that we have not addressed defendants' additional arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

We affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1854-23